Thurman, C. J.
This cause was tried by a jury in the district eourt, a verdict returned for the plaintiff, and a motion for a new trial made by the defendant, which, at his instance, was reserved for the decision of this court. The authenticated statement of the testimony and rulings of the court, is somewhat voluminous, but .all that is material to be reported may be very briefly stated.
It seems that Wason requested McG-atrick, who was his hired *570 man, to assist him in placing certain railroad cars and trucks— •which he had sold and agreed to skip from Cleveland to Toledo— on a vessel; to do which it was necessary to raise them from the dock by the use of machinery and manual effort. McGatrick consented. The work was to be done the next day, which was Sunday, November 15th, as the vessel was about to sail, and her master would not take the freight unless shipped on that day; and “ it was a matter of great necessity that it should be shipped as. speedily as possible, as navigation was about closing.” While raising one of the trucks, a part of the machinery gave way, owing to which the truck fell.upon McGatrick, breaking both his legs. To recover damages for this injury, he brought an action on the case-against Wusod, and filed a declaration, to which Wason demurred generally. The court sustained the demurrer, and thereupon gave leave to the plaintiff to amend his declaration, upon the payment of certain costs; but upon a subsequent day, instead of so amending, he discontinued his action, and shortly afterward commenced the present suit.
There was also evidence tending to prove that it was either • Wason’s sole duty, or the joint duty of him and the master of the vessel, in virtue of an agreemont between them, to put the-^freight on board; and that the operation of so doing, when the accident occurred, was under his control, or the joint control of the two. A part of the machinery employed was furnished by Wason and a part by the vessel, but the particular piece that gave way was provided by the latter. On the other hand, there was evidence tending to disprove the agreement above referred to, and-, to show that the whole duty of and control of loading the vessel belonged to the master, and that Wason lent his aid merely as an. assistant. Testimony was also given to prove, that but for Mc-Gatrick’s disobedience of an order given by Wason, he would not have been injured; but he testified that he heard no such ordenas that spoken of by the witnesses, and was guilty of no disobedience.
The grounds upon Which a new trial Is asked are thus stated by counsel:
“ 1. The former recovery, set forth in the answer and proved on the trial, was a complete and perfect bar to this action.
“ 2. The defendant, when the injury happened of which ha- *571 -complains, was in fault of himself, being in the commission of an unlawful act, and can not therefore maintain the suit.
“ 3 The variance between the allegations in the petition and the proof; or, in other words, the entire failure of the testimony to support the representations in the petition.”
We think that the court were right in- telling the jury, that the record of the former suit constituted no bar. There was no judgment upon the demurrer, that the defendant go hence, but, on the contrary, leave was given the plaintiff to amend, and the suit was subsequently terminated by a discontinuance. An order simply sustaining a demurrer, without any judgment consequent upon it, is not a recovery.
The next inquiry is, was the labor at which the plaintiff was en.gaged, when injured, a violation of the Sunday act (Swan’s new Stat. 302) ; and if so, can he recover ?
*On his part, it is contended that it was a work of neces-sity, and therefore within the exceptions of the act.
The act forbids “ common labor” on Sunday, but excepts “works •of necessity and charity.”
Was the shipping of the freight, under the circumstances mentioned, a work of necessity? The defendant himself testified that it was. He said : “ It was a matter of great necessity that they should be shipped as speedily as possible, as navigation was about closing.”
But was it a work of necessity within the meaning of the act?
In answering this question, we must always keep in mind that it is no part of the object of the act to enforce the observance of a religious duty. The act does not, to any extent, rest upon the ground that it is immoral or irreligious to labor on the Sabbath, any more than upon any other day. It simply prescribes a day of rest, from motives of public policy and as a civil regulation; and as the prohibition itself is founded on principles of policy, upon the same principles certain exceptions are made, among which are “works of necessity and charity.” In saying this, I do not mean to intimate that religion prohibits works of necessity or charity on the Sabbath; but merely to show that the principles upon which our statute rests, are wholly secular; and that they are none the less so because they may happen to concur with the dictates of religion. Thus the day of rest, prescribed by the statute, is the ■Christian Sabbath, yet so entirely does the act rest grounds *572 of public policy, that, as was said in Bloom v. Richards, 2 Ohio St. 391, 392, it would be equally constitutional and obligatory, di,d it name any other day, and it derives none of its force from the fact that the day of rest is Sunday. For, as was also said in that ease, no power whatever is possessed by the legislature over things spiritual, but only over things temporal; no power whatever to enforce the performance of religious duties, simply because they are religious — but only, within the limits of the constitution, to maintain justice and promote the public welfare.
^Unless, then, we keep constantly in mind that the act rests upon public policy alone, we will be in great danger of giving it a wrong construction ; and instead of reading it in the light of the constitution, which prohibits all religious tests and preferences, find ourselves led away from its meaning by the influence of our own peculiar theological tenets.
The difficulty of determining whether, in any particular case of labor, the work was one of necessity or not, within the meaning of the statute, is not usually very groat. This is owing to the fact that the requirements of the law are very generally observed ; or possibly to the fact that judicial action is seldom involved except when its provisions have been palpably violated.
But it is a task of much difficulty, and one that a court ought not unnecessarily to attempt to draw a line that shall clearly distinguish works of necessity from those that are not.
It is easy to say, that to feed the hungry, to attend the sick, and to rescue a fellow-beiñg from suffering or danger, are works of both necessity and charity; but it would not do to say that none others are. For the personal wants or safety of the human species does not mark the limit. It is a work of necessity and charity to take care of and preserve a dumb brute, as well as a human being; and no one would imagine that the statute is violated by feeding one’s cattle, or drawing one’s sheep from a pit, on the Sabbath day.
But it is very clear that we have not yet reached the limit, and that it will not do to hold that nothing is a work of necessity that is not performed in the care or for the preservation of animal life. The care or preservation of property, though inanimate, may be a work of necessity. If a house should take fire on the Sabbath, it would obviously be lawful to save it by labor. It would be equally so to save a crop from the effects of bad weather, when to *573, 574 omit doing so would result in its loss or material injury — or, for a merchant to save his goods; a manufacturer or mechanic his wares; a seaman his vessel; or, in a *word, any man his property in danger of destruction or injury, on the Sabbath day.
Nor will it do to limit the word “ necessity ” to those cases of danger to life, health, or property which are beyond human foresight or control. On the contrary, the necessity may grow out of, or indeed be incident to, a particular trade or calling, and yet be a case of necessity within the meaning of the act. For it is no part of the-design of the act to destroy, or impose onerous restrictions upon any lawful trade or business ; and hence, under a similar statute, it has been held in a sister state, that it is lawful to keep a blast-furnace at work on Sunday, because it is a work of necessity. So, too, it has been held that, under special circumstances, a mill may grind on that day; and I think it will hardly be questioned, that a gas company may supply gas ; a water company, water; and a dairy man, milk, to their respective customers, on that day.
Other illustrations might be given, but these are quite sufficient to show, that the necessity spoken of in the statute, is not an absolute, uncontrollable necessity only; but may be a necessity created' by the exigencies of society or trade. If nothing but absolute necessity was intended, it would, in general, bo unlawful to prepare a meal on the Sabbath; because it might without difficulty be previously prepared, or because most people might safely enough fast for twenty-four hours. It would be equally unlawful to supply us with gas-light, for we might use candles previously laid in, or retire to our beds at twilight. And so many things, by all men admitted to be lawful, would be brought within the prohibition of the statute.
In using the expression “ exigency of trade,” I have been speaking of trade generally, and not of a necessity created by a particular contract a man may have made. It is true, that a man might be ruined by a failure to deliver an article he had contracted to deliver, if he could not ship it upon a Sunday, and this might be without any fault of his; in which case it would ^become the duty of a court to consider whether he could save himself only by a violation of the law. And -when that question shall arise, it may possibly be found difficult to say, that a man may lawfully labor all day to di’ag a sheep out of a pit, and yet can not pei’form one-tonth of that labor to save himself and his family from pecuniary destruction j that he may lawfully woi’k to save one dollar’s worth of *575 erty in the shape of an animal, but that he violates the law if he save all his property by fulfilling his contract.
In the case before us, however, we are not limited to a necessity arising out of a particular contract; but we have, in addition, a necessity resulting from natural causes and the general course of trade and commerce. The cars were shipped upon the Sabbath, because the vessel- — -the only one that could be obtained — was to sail that day, and delay was perilous, the navigation being about to close from the severity of the weather. As before remarked, the defendant himself testified, that it was a case of great necessity; and we are unanimously of the opinion that -it was one within the meaning of the statute. It follows, that the plaintiff was not in the commission of an unlawful act when the injury occurred, and this ground of the defendant consequently fails.
How the case would stand had the work not been a necessity, it is immaterial to consider, and we express no opinion upon it. It would require investigation and much reflection, for we do not look upon the case cited from 10 Metcalf,- 363, as settling the law.
It is next contended, that the testimony failed to support the petition, and made out no cause of action against the defendant.
Under this head certain legal propositions have been argued, as to which I shall merely state our conclusions.
If Wason had no charge of, or control over, the operation of shipping the cars and trucks, but, on the contrary, the duty of shipping them rested solely upon the master of the vessel, and he had *the entire control over the operation, and Wason .acted merely as his assistant or servant, then the action should have been brought against the owner of a vessel, and not against Wason.
But if it was Wason’s duty to ship them, or if it was the joint duty of him and the master, he was (as between him andMeGatrick) liable for the injury, if it resulted from his neglect, or that of the master, to provide suitable machinery — the defect in the machinery being unknown to McGatrick. The general rule is, that an employer who provides the machinery, and oversees and controls its operation, must see that it is suitable; and if an injury to the workman happen by reason of a defect unknown to the latter, and which the employer, by the use of ordinary care, could have cured, such employer is liable for the injury. C., C. & C. R. R. Co. v. Keary, 3 Ohio St. 201.
Which of these two supposed cases is shown by the testimony, ia *576 •certainly a matter of great doubt; but as we must presume that the law upon this head was correctly given to the jury — the charge not being set out or excepted to — we must also presume that the jury found the facts to be those above stated, as necessary to make the defendant liable. Should we disturb this finding? If it is ■clearly wrong, we must do so; if we only doubt its correctness, we must let it alone. In French v. Millard, 2 Ohio St. 53, this court .said: “ We are not satisfied, that the verdict of the jury was right. But this is not enough. A mere difference of opinion between the court and jury does not warrant the former in setting aside the finding of the latter. 1 That would be, in effect, to abolish the institution of juries, and substitute the court to try all questions of fact. It must be clear that the jury has erred before a new trial will be granted, on the ground that the verdict is against the weight of evidence.” Now, if this is the rule, as it undoubtedly is, even in the court where a cause is tried, and before whom the witnesses appeared and testified, a fortiori ought it to be the rule, when another •court decides the motion for a new trial, with no other knowledge of the facts than *is derived through the imperfect medium of a written statement ?
A majority of the court are unable to say that the verdict in this case is clearly wrong. The motion for a new trial must therefore be overruled, and judgment entered for the plaintiff.
Bartley, J., dissented, upon the ground that the verdict was .against the weight of the evidence.